UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JOYCE F. HOLLAND,

                              Plaintiff,                          10 Civ. 2525 (PKC) (RLE)

        -against-

                                                                    MEMORANDUM
                                                                    AND ORDER
CITY OF NEW YORK, DoITT, DC 37,
LOCAL 1549,

                              Defendants.
-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        Plaintiff Joyce F. Holland, proceeding pro se, brings this employment discrimination action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991 ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 721 et seq. ("ADEA"), the Americans with Disabilities Act, 42 U.S.C. § 12112 et seq. ("ADA"), the New York State Human Rights Law, N.Y. Exec. L. § 290 et seq. ("NYSHRL"), the New York City Human Rights Law, N.Y. City Admin. Code § 8-101 et seq. ("NYCHRL"), and 42 U.S.C. §§ 1981 and 1983.  Plaintiff alleges that her former employer, the New York City Department of Information Technology and Telecommunications ("DoITT"), unlawfully terminated her on the basis of race, gender, age, and disability.  Plaintiff also alleges that Local 1549 of District Council 37, American Federation of State, County, and Municipal Employees, AFL-CIO ("Local 1549")—the union that represented plaintiff— breached its duty of fair representation by failing to fully investigate her discrimination claims against DoITT.

        In her Amended Complaint ("AC"), plaintiff names as defendants the City of New York, DoITT, and Local 1549.  (AC at 1–2.)  The City, representing itself and the DoITT,

and Local 1549 have each moved for judgment on the pleadings under Rule 12(c), FED. R. CIV. P.  For the reasons set forth below, the defendants' motion is granted in part and denied in part.

## BACKGROUND

Plaintiff is an African-American female born in 1956 and blind in her left eye.  (AC at 3, 7.)  Plaintiff began working for the City of New York as a call center operator for the DoITT on October 5, 2005.  (Id. at 5.)  Plaintiff worked eight-hour shifts beginning at midnight.  As one of many operators in the call center, plaintiff received incoming customer service calls.  Plaintiff's two immediate managers, Lorrie Yard-Smith and Keith Heerey, are both Caucasian.  The immediate managers report to two supervisors, who are female and of Latin descent.  (Id.)

Plaintiff alleges that she was terminated as a call center operator on February 7, 2007.  (Id.)  In general, plaintiff describes the call center as feeling "very much like a plantation."  (Id. at 6.)  In detail, plaintiff alleges that approximately 80% of the operators at the DoITT's 311 call center were African-American women, the managers "primarily[] Caucasian[]," and the supervisors "primarily Latino."  (Id.)  Plaintiff further alleges that one of her managers, Ms. Yard-Smith, "openly disgraced" the mostly African-American operators on numerous occasions by "kicking open desk drawers" and labeling as insubordinate any African-American operators who objected.  (Id.)

In support of her claim of gender discrimination, plaintiff alleges that the male call center employees "were sort of 'given a pass' and [were] treated differently" than the female employees.  (Id.)  Plaintiff contends that the DoITT had a practice of favoring male employees in granting overtime.  Plaintiff describes an incident in which her request for overtime was denied, whereas the requests of two of her co-workers—a white male and an African-American male—were granted.  (Id.)

In support of her claim of age discrimination, plaintiff alleges that on multiple occasions, younger employees "were given a pass" for arriving late to work and that in two specific instances, she observed "two young women . . . [who were] given a pass on being late." (Id.)  Plaintiff attests that "on a number of occasions," DoITT management "disrespected" and "openly and clearly" disgraced older African-American female employees by criticizing their skills as "inadequate." (Id.)  Lastly, plaintiff describes a specific instance in which a younger African-American male employee received a promotion and then, in a supervisory role, would stand over older African-American female employees "with a clear intent to discredit them." (Id. at 7.)

Plaintiff also alleges that the DoITT discriminated against her on the basis of her disability, blindness in her left eye. (Id.)  According to plaintiff, Ms. Yard-Smith frequently called plaintiff into her office to discuss plaintiff's infractions wherein Yard-Smith would inquire about the condition of plaintiff's disability.  Plaintiff further alleges that she was denied all requests for "copies [of] these write-ups" and that they were absent from her personnel folder. (Id.)

Plaintiff worked at the DoITT until February 7, 2007 when, after missing "approximately 4 to 5 days" or "about a week" of work due to surgery on her left eye, plaintiff states she was "given a letter stating that [she] was terminated." (Id.)  According to plaintiff, the DoITT terminated her because of her "medical absence" and that the City therefore "failed to accommodate [her] disability." (Id.)

In her Amended Complaint, plaintiff admits to never having discussed her objections to any of the aforementioned discriminatory practices with anyone at DoITT because she "felt [they] would fall on deaf ears" and for "fear that [she] would be terminated like so

many of the other older black women." (Id. at 6, 7.)   Instead, plaintiff consulted her local union representative, Eddie Douglas.  According to plaintiff, Mr. Douglas "never looked into" her discrimination claims and merely advised her to "never be late." (Id. at 6.)

Plaintiff commenced the present suit in February 2010, alleging discrimination against the City of New York and the DoITT ("City Defendants"), and her union, Local 1549.  In an Order dated March 22, 2010, Chief Judge Preska granted plaintiff's request to proceed in forma pauperis and directed plaintiff to file an amended complaint "detailing whether she exhausted her claims with the U.S. Equal Employment Opportunity Commission ("EEOC") prior to commencing her action. (Docket #3.)  On May 21, 2010, plaintiff filed an Amended Complaint with this Court alleging the discrimination claims described above. (Docket #4.)

## LEGAL STANDARD

All defendants have moved for judgment on the pleadings pursuant to Rule 12(c), FED. R. CIV. P.  A motion for judgment on the pleadings under Rule 12(c) is reviewed under "the same standard as that applicable to a motion under Rule 12(b)(6)." King v. Am. Airlines, Inc., 284 F.3d 352, 356 (2d Cir. 2002) (quoting Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999)).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "'Labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" rather, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 555).  In considering a Rule 12(b)(6) motion to dismiss, all non-conclusory factual allegations are accepted as true, see id. at 1949–50, and all reasonable

inferences are drawn in plaintiff's favor.  See In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (per curiam).

For complaints alleging discrimination, the Iqbal plausibility standard applies in conjunction with the pleading standards set forth in Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002).  See Twombly, 550 U.S. at 547 ("This analysis does not run counter to Swierkiewicz . . . .  Here, the Court is not requiring heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."); Arista Records LLC v. Doe, 604 F.3d 110, 119–21 (2d Cir. 2010) (finding Swierkiewicz, Twombly, and Iqbal in agreement).  Indeed, Swierkiewicz "applies with equal force to any claim . . . that the McDonnell Douglas framework covers" and retains its "vitality" in the wake of the Court's decisions in Twombly and Iqbal.  See Boykin v. KeyCorp, 521 F.3d 202, 213–14 (2d Cir. 2008)).

At the pleading stage, Swierkiewicz teaches that a plaintiff is not required to come forth with allegations sufficient to make a prima facie case of employment discrimination or to satisfy the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007).  Rather, "a complaint must include . . . a plain statement of the claim . . . [that] give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Swierkiewicz, 534 U.S. at 512 (internal quotations omitted).  Accordingly, to overcome a motion to dismiss in an employment discrimination action, a complaint must give fair notice of the basis of plaintiff's claims and the claims themselves must be facially plausible.

In this action, plaintiff proceeds pro se.  Courts are to review pro se complaints under a more lenient standard than that applied to "formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam).  Accordingly, the Court construes plaintiff's

submissions liberally and interprets them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 471 (2d Cir. 2006) (emphasis in original) (internal quotations omitted). Although this applies with particular force when a plaintiff alleges civil rights violations, McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004), the Court need not accept as true plaintiff's "conclusions of law or unwarranted deductions of fact." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994).

In ruling on a motion for judgment on the pleadings under Rule 12(c), "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). A court may also consider any document integral to the complaint upon which it "relies heavily." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). Lastly, this Court may consider matters of public record for which it make take judicial notice. See Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

## DISCUSSION

Plaintiff alleges discrimination under Title VII, ADEA, ADA, sections 1981 and 1983, and the NYSHRL and NYCHRL. (AC at 1–2, 5.) Plaintiff also appears to allege that Local 1549 breached its duty of fair representation by failing to "look[] into" plaintiff's grievances with DoITT management prior to her termination. (Id. at 6.)

### I. Defendants' Motion to Dismiss Plaintiff's Claims Under Title VII, ADEA, and ADA for Failing to Exhaust Administrative Remedies Is Granted

Both the City Defendants and Local 1549 move to dismiss plaintiff's claims under Title VII, the ADEA, and the ADA for plaintiff's failure to exhaust her administrative remedies. A plaintiff claiming discrimination under Title VII must exhaust his or her claim prior to bringing an action in federal court. 42 U.S.C. § 2000e-5(b). To exhaust a claim, a plaintiff must

bring his charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") or a relevant state agency authorized to entertain private discrimination claims. McPherson v. N.Y. City Dep't of Educ., 457 F.3d 211, 213 (2d Cir. 2006) (citing 42 U.S.C. § 2000e-5(f)(1)) ("Under Title VII and the ADEA, a plaintiff can sue in federal court only after filing timely charges with the EEOC.").  A private Title VII plaintiff must also first receive a "right-to-sue" letter from the EEOC prior to instituting suit in federal court.  Id.

The exhaustion requirement also applies to charges of age discrimination under the ADEA.  Holowecki v. Fed. Express Corp., 440 F.3d 558, 562 (2d Cir. 2006).  Unlike a Title VII claim, however, a plaintiff need not receive a right-to-sue letter prior to bringing a federal action provided the charge "was pending before the EEOC for at least 60 days."  McPherson, 457 F.3d at 215.  Just as with a claim under Title VII or the ADEA, a precondition to filing an ADA claim in federal court is the exhaustion of administrative remedies and the timely filing of a complaint with the EEOC.  See Curto v. Edmundson, 392 F.3d 502, 503 (2d Cir. 2004); Harris v. Beth Israel Med. Ctr., 2009 WL 612498, at *8 (S.D.N.Y. Mar. 4, 2009) ("ADA claims cannot be brought until a plaintiff exhausts administrative remedies.").  A plaintiff's failure to timely exhaust her discrimination claims before the EEOC or related state agency is grounds for dismissal.  See, e.g., Edmundson, 392 F.3d at 503 (affirming dismissal of pro se ADA claim where there was "no evidence in the record that [plaintiff] exhausted her administrative remedies prior to filing her ADA claim in federal court"); Mauro v. N.Y. City Transit Auth., 2010 WL 1424009, at *2–*3 (S.D.N.Y. Apr. 9, 2010) (granting motion to dismiss Title VII and ADEA discrimination claims "in [their] entirety" where pro se plaintiff "failed to exhaust administrative remedies").

Plaintiff's claims under Title VII, the ADEA, and the ADA are dismissed for failure to exhaust her administrative remedies with the EEOC or an appropriate New York state agency.  Plaintiff has produced no evidence that she filed charges with the EEOC or any New York state agency authorized to hear discrimination claims.  In response to a preprinted question contained in her Amended Complaint, provided by the Court's Pro Se Office, plaintiff acknowledges that the EEOC "has not issued a Notice of Right to Sue letter."  (AC at 4.)  Moreover, after receipt of her initial complaint, this Court directed plaintiff to amend her complaint stating whether she had exhausted her claims with the EEOC and, if so, to attach a copy of her Notice of Right to Sue letter.  (Docket #3.)  Plaintiff has not so stated, nor has she attached any correspondence from the EEOC; rather, plaintiff admits in her Amended Complaint that the deadline to file charges had passed by the time she "finally contacted the EEOC."  (AC at 5.)

As plaintiff presents no evidence in her Amended Complaint that she ever filed a disability-related discrimination claim in federal court or before a relevant state agency—and explicitly admits to having missed the deadline before "finally contact[ing] the EEOC" (AC at 4)—both defendants' motions for judgment on the pleadings as to plaintiff's claims under Title VII, the ADEA, and the ADA are granted.  See McPherson, 457 F.3d at 213.  Plaintiff's claims under these statutes are therefore dismissed as against both the City Defendants and Local 1549.

II. Defendants' Motion to Dismiss Plaintiff's Claims Under Section 1981, Section 1983, NYSHRL, and NYCHRL as Untimely Is Denied

Plaintiff also alleges discrimination under sections 1981 and 1983, and the NYSHRL and NYCHRL.  (AC at 1, 5.)  Both the City Defendants and Local 1549 move to dismiss these claims as barred by the applicable statute of limitations.

"The statute of limitations applicable to claims brought under §§ 1981 and 1983 in New York is three years." Patterson v. Cnty. of Oneida, 375 F.3d 206, 226 (2d Cir. 2004). Although the New York state statute of limitations is used to compute time, "[f]ederal law determines when a federal claim accrues." Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994). Under federal law, a cause of action accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002). In employment discrimination cases, a claim arises "on the date the employee learns of the employer's discriminatory conduct." Flaherty v. Metromail Corp., 235 F.3d 133, 137 (2d Cir. 2000).

As with claims under sections 1981 and 1983, claims under the NYSHRL and NYCHRL are each subject to a three-year statute of limitations. See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 2002); Butler v. N.Y. Health & Racquet Club, 768 F. Supp. 2d 516, 536 n.12 (S.D.N.Y. 2011) ("The statute of limitations is three years for claims brought under both the NYSHRL and the NYCHRL.") (citing N.Y. C.P.L.R. § 214(2); N.Y. City Admin. § Code 805-2(d)). As discussed above, "the timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory decision." Morse v. Univ. of Vt., 973 F.3d 122, 125 (2d Cir. 1992). Accordingly, this Court considers the timeliness of plaintiff's claims under sections 1981 and 1983 and the NYSHRL and NYCHRL together.

The last discrete act of discrimination plaintiff alleges was the termination of her employment on February 7, 2007. (AC at 7.) Therefore, plaintiff's discrimination claims as they relate to her termination are timely only if she properly commenced this action on or before February 7, 2010. As will be discussed, the complaint was time-stamped received by the Court's night depository on February 5, 2010, but was not received by the Court's Pro Se Office until

9

February 8, 2010.  The defendants urge that the receipt by the Pro Se Office controls and that plaintiff's action is thus untimely.

In this action, plaintiff proceeds pro se and in forma pauperis.  "At least where in forma pauperis relief is granted, the action should be treated as timely, provided the complaint was received by the clerk's office prior to the expiration of the limitations period."  Toliver v. Sullivan Cnty., 841 F.2d 41, 42 (2d Cir. 1988).  "Where a pro se plaintiff submits her complaint to the Pro Se Office, and the complaint is not filed until a later date, the date that [the plaintiff] filed his complaint with the Pro Se Office . . . is the relevant date for purposes of determining whether [her] claims are time-barred."  Jackson v. N.Y. State Dep't of Labor, 709 F. Supp. 2d 218, 228–29 n.5 (S.D.N.Y. 2010) (internal quotations omitted).  Interpreting Toliver, courts in this district have considered pro se actions "filed" on the date the Pro Se Office receives the complaint and accompanying request to proceed in forma pauperis, if applicable.  See, e.g., Howard v. MTA Metro-North Commuter R.R., 2011 WL 5335390, at *7 (S.D.N.Y. Nov. 7, 2011) ("[T]he date to determine the timeliness of a complaint is the date the pro se office received the complaint . . . ."); Smith v. St. Luke's Roosevelt Hosp., 2009 WL 2447754, at *11 (S.D.N.Y. Aug. 11, 2009) ("The law is clear in this Circuit that a complaint is deemed filed for statute of limitations and similar purposes when received by the Court's Pro Se Office." (internal quotations omitted)).

Plaintiff's original complaint and request to proceed in forma pauperis ("IFP request") are stamped "RECEIVED" by "U.S. DISTRICT COURT, S.D.N.Y." on February 5, 2010 at 5:51 PM and 5:59 PM, respectively.  (Docket #2; Docket #41 at 14, 15.)  However, the documents were not stamped "RECEIVED" by this Court's Pro Se Office until February 8, 2010—three days later, after the expiration of the three-year limitations period.  (AC at 10.)

10

Citing to this Court's Manual for pro se litigants—which states the normal business hours of the Pro Se Office as between 8:30 AM and 5:00 PM—the defendants contend that plaintiff's action is untimely because the Pro Se Office of this Court did not officially "receive" plaintiff's complaint and IFP request until the morning of February 8. (City Defs.' Mem. in Further Support at 2–3; Union Defs.' Mem. in Further Support at 4.)

This Court considers plaintiff's complaint filed as of February 5, 2010. Local Civil Rule 1.2 provides in pertinent part: "After regular business hours, papers for the District Court may only be deposited in the night depository. Such papers will be considered as having been filed in the District Court as of the date stamped thereon, which shall be deemed presumptively correct." Id. It is undisputed that plaintiff delivered her complaint to this Court's night depository on the evening of February 5 and that her complaint and IFP request were stamped "RECEIVED" at 5:51 and 5:59 that evening. (Docket #2; Docket #41 at 14, 15.) Local Civil Rule 1.2 commands that all "papers" are to be considered filed on the date stamped thereon. Expressly or otherwise, this rule does not distinguish between complaints, papers purporting to commence an action, motion papers, or any other type of submission.

The Second Circuit's holding in Toliver supports this Court's conclusion. The court in Toliver held that the date a pro se complaint and IFP request should be considered "filed" is not the date such documents are stamped "filed" on the docket sheet, but when they are actually received by the Court. Id. at 42. That the complaint in Toliver was stamped as "received" by the Pro Se Office on the same day plaintiff delivered his complaint does not require the conclusion that a court does not "receive" a pro se complaint until the Pro Se Office literally stamps it as such. Indeed, neither Toliver nor any case cited by the defendants presents the situation where plaintiff's commencing papers were stamped "received" by the Court's after-

11

hours depository, but not stamped as "received" by the Pro Se Office until some period after the relevant limitations period had lapsed.  See also Ocasio v. Fashion Institute of Tech., 9 Fed. Appx. 66 (2d Cir. 2001) ("Ocasio delivered his motion to proceed in forma pauperis, along with the first complaint, to the district court on May 13, 1995, thereby tolling the statute of limitations with two days to spare." (citing Toliver, 841 F.2d at 42)).  The Toliver court's announcement of a broad prophylactic instruction advising district courts not to allow receipt and filing procedures to "work to [a plaintiff]'s disadvantage" is hardly served by dismissing plaintiff's complaint on the basis that its RECEIVED stamp came from one office but not the other.  See id. ("This delay [between plaintiff's delivery of complaint and its filing by Pro Se Office] should not work to [his] disadvantage.").[1]

        Lastly, to the extent that there exists doubt about whether receipt of a pro se complaint requires a stamp by the Court's Pro Se Office—as opposed to physical receipt reflected via depository with the Clerk's Office's night depository—defendants' motion to dismiss plaintiff's claims as untimely should be decided in plaintiff's favor.  Ortiz v. Cornetta, 867 F.2d 146 (2d Cir. 1989) (reversing Rule 12(b)(6) dismissal of pro se complaint where "there was some doubt as to whether the complaint was actually first received by the pro se office on June 26, 1987, or whether it first arrived sometime prior to . . . the date that the statute of limitations expired").  "This doubt is all that is necessary to withstand a motion to dismiss under [R]ule 12(b)(6)."  Id. (citing Egelston v. State Univ. Coll., 535 F.2d 752, 754 (2d Cir. 1976) (holding a Rule 12(b)(6) dismissal improper unless it "appears beyond doubt" that plaintiff's claim is barred by applicable statute of limitations).

---

[1] Chief Judge Preska's Order dated March 22, 2010 noted that plaintiff's initial complaint "was received" by the Pro Se Office on February 8, 2010.  (Docket #3.)  This statement is correct and does not foreclose this Court's conclusion that plaintiff's complaint was timely filed with the Court on February 5, 2010.

12

Accordingly, all defendants' motions to dismiss plaintiff's claims under sections 1981 and 1983 and the NYSHRL and NYCHRL as untimely are denied.

III.    Local 1549's Motion to Dismiss Plaintiff's Discrimination Claims for Failure to State a Claim Is Granted

Alternatively, Local 1549 moves to dismiss plaintiff's discrimination claims for failure to state a claim upon which relief can be granted.  (Union Defs.' Mem. at 8–10.)  As plaintiff's claims under Title VII, the ADEA, and the ADA are dismissed for failure to exhaust her administrative remedies, this Court considers Local 1549's argument only as it relates to plaintiff's claims under sections 1981 and 1983, and the NYSHRL and NYCHRL.

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981.  Section 1981 thus proscribes discrimination on the basis of race.  Oneida v. Cnty. of Patterson, 375 F.2d 206, 224 (2d Cir. 2004).  The phrase "'make and enforce contracts' includes the making, performance, modification, and *termination* of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  Lauture v. Int'l Bus. Machs. Corp., 216 F.3d 258, 260–61 (2d Cir. 2000) (emphasis in original).  "To establish a § 1981 claim, a plaintiff . . . must show: (1) that [she] is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) that the discrimination concerned one or more of the activities enumerated in § 1981."  Id. at 261 (internal citation omitted).

Employment discrimination claims under the NYSHRL are construed pursuant to the same standards at its federal counterparts, including section 1981.  See Ruiz v. Cnty. of Rockland, 609 F.3d 486, 491–92 (2d Cir. 2010).  When an issue of statutory construction arises, the NYCHRL is to be construed more liberally than federal standards and the NYSHRL.  See

13

Williams v. N. Y. City Housing Auth., 61 A.D.3d 62, 66–67 (1st Dep't 2009).  At this stage, plaintiff is not required to state a prima facie case of discrimination, but merely to present facially plausible claims that give the defendant fair notice of the basis of those claims and the grounds upon which they rest.  See Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007).

Construed generously, plaintiff fails to state a facially plausible discrimination claim against Local 1549.  Plaintiff's allegation consists only that her union representative, Eddie Douglas, "never looked into" DoITT's alleged discrimination and merely advised her only to never be late." (AC at 6.)  Nowhere does plaintiff allege any facts suggesting: that Mr. Douglas or any other representative or employee of Local 1549 acted with discriminatory intent toward plaintiff; the basis of any possible discriminatory animus by the union; that the union was involved in the City's decision to terminate plaintiff or otherwise caused her injury; or that the union's failure to have a "sit down with management" contributed to the City's decision to terminate plaintiff.  (Id.)

To the extent that plaintiff seeks to assert her section 1983 claim against the Local 1549, such a claim is dismissed.  Section 1983 is "not a source of substantive rights . . . . but merely provides a method for vindicating federal rights conferred elsewhere."  Id. (internal citations and quotations omitted).  Oneida, 375 F.3d at 225.  Because plaintiff's potential discrimination claims against Local 1549 depend upon the existence of independent violations of the Constitution or federal law—and as this Court has found that none have been stated— plaintiff's section 1983 claim against Local 1549 is dismissed.  See Segal v. City of N.Y., 459 F.3d 207, 219 (2d Cir. 2006) (affirming dismissal of 1983 claim where district court "properly found no underlying constitutional violation").[2]

---

[2] As plaintiff has failed to state a discrimination claim under applicable federal or state law, it is unnecessary to determine whether Local 1549 was acting under "color of state law" or otherwise conspired with DoITT or the City

14

Accordingly, plaintiff's discrimination claims against Local 1549 under sections 1981 and 1983 and the NYSHRL and NYCHRL are dismissed.

IV.     Plaintiff's Retaliation Claim Against Both Defendants Is Dismissed

Plaintiff also brings a retaliation claim, which this Court construes as asserted against both the City Defendants and Local 1549. (AD at 3.) "'[T]o establish a prima facie case of retaliation, an employee must show [1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action.'" Richardson v. Comm'n on Human Rights & Opportunities, 532 F.3d 114, 123 (2d Cir. 2008) (quoting Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir.1998)), petition for cert. filed, 77 U.S.L.W. 3563 (U.S. Jan. 26, 2009). At this stage, plaintiff need not establish a prima facie case of discrimination, but must nonetheless allege evidence stating a plausible claim of retaliation. Boykin v. KeyCorp, 521 F.3d 202, 213–14 (2d Cir. 2008). As plaintiff failed to exhaust her administrative remedies for her claims under Title VII, the ADEA, and the ADA, I consider plaintiff's retaliation claim only under section 1981, NYSHRL, and NYCHRL.

Plaintiff's retaliation claim must be dismissed for failing to plausibly allege that she engaged in a protected activity. A protected activity is an activity taken in good faith to protest or oppose a prohibited practice under any of the relevant anti-discrimination statutes. See Kessler v. Westchester Cnty. Dep't of Soc. Servs., 461 F.3d 199, 210 (2d Cir. 2006) (quoting McMenemy, 241 F.3d at 285). The protected activity must put the employer "on notice" of the aggrieved employee's claims of discrimination. See, e.g., Morrow v. Metro. Transit Auth., 2009 WL 1286208, at *8 (S.D.N.Y. May 8, 2009) (dismissing retaliation claim where plaintiff only

---

of New York in terminating plaintiff. See Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 323 (2d Cir. 2002) (noting that labor unions "generally are not state actors" absent additional evidence).

"alluded" to discrimination in EEOC charge and never complained of discrimination to his employer).  "[G]eneral corporate knowledge that the plaintiff has engaged in protected activity" is sufficient.  Patane v. Clark, 508 F.3d 106, 115 (2d Cir. 2007) (internal citation omitted).

Here, it is undisputed that plaintiff never filed a complaint with the EEOC.  (AC at 5.)  Moreover, nowhere in plaintiff's Amended Complaint does she allege that she ever brought charges before the New York State Division of Human Rights or relevant state agency, or that she ever complained to any of her managers or supervisors with the DoITT about its discriminatory practices.  Indeed, plaintiff admits that she "did not bring these incidents [of alleged discrimination] to upper-level management" because she "felt [they] would fall on deaf ears."  (Id. at 6.)  As the plaintiff does not plausibly demonstrate she ever engaged in a protected activity in opposing the DoITT's allege discriminatory practices, her retaliation claim against the City Defendants is dismissed.  Morrow, 2009 WL 1286208, at *8 (dismissing retaliation claim where employee sent two letters to corporate president, neither of which complained of discrimination).

To the extent that plaintiff also alleges retaliation against Local 1549, this claim must be similarly dismissed.  Plaintiff claims she complained of DoITT's discrimination not to DoITT, but to her union representative, Eddie Douglas, who "never looked into [plaintiff's] grievances."  (AC at 6.)  Even were this Court to construe plaintiff's discussions with Douglas as protected activity under any relevant statute, plaintiff does not present plausible allegations that her employer, DoITT, was ever put on notice of her complaints to Douglas, that the union ever took an adverse employment action against her, or that there was any causal connection between those discussions and plaintiff's February 7, 2007 termination.  See, e.g., Jackson v. N.Y. State Dep't of Labor, 709 F. Supp. 2d 218, 228 (S.D.N.Y. 2010) (dismissing retaliation claim where

16

plaintiff failed to allege facts that plausibly suggested an adverse employment action or causal connection). Accordingly, any retaliation claim against Local 1549 must also be dismissed.

      V.      Plaintiff's Claim for Breach of the Duty of Fair Representation Against Local 1549 Is Dismissed

Construed generously, plaintiff's Amended Complaint appears to allege that the Union defendants breached their duty of fair representation toward plaintiff by not adequately investigating plaintiff's allegations of discrimination toward the DoITT. (AC at 6.) To the extent that plaintiff alleges a breach of the duty of fair representation by Local 1549, her claim is dismissed.

"Under New York state law, a claim against a union for violating the duty of fair representation is subject to a four-month statute of limitations." Williams v. City Housing Auth., 458 F.3d 67, 69 (2d Cir. 2006) (citing N.Y. C.P.L.R. § 217(2)(a)). N.Y. C.P.L.R. 217(2)(a) provides, in pertinent part, that a plaintiff bringing such a claim must do so within four months of when she "knew or should have known that the breach has occurred" or the date she "suffer[ed] actual harm, whichever is later." Id. As discussed above, plaintiff initially filed her complaint in this action on February 5, 2010. Plaintiff alleges that she was terminated on February 7, 2007, and her discussions with Eddie Douglas purportedly occurred sometime prior to her termination.[3] Plaintiff has not brought any charges against Local 1549 prior to instituting this action. As such, plaintiff's potential claim against Local 1549 is untimely and must be dismissed.

Accordingly, Local 1549's motion for judgment on the pleadings as to plaintiff's claim for breach of the duty of fair representation is granted.

---

[3] Plaintiff states in her Amended Complaint: "Fearful, that I would loose [sic] my job, I did not bring these incidents to upper-level management . . ., but instead my union representative, Eddie Douglas." (AC at 6.)

17

## CONCLUSION

For the foregoing reasons, the defendants' motion for judgment on the pleadings is granted in part and denied in part. The motion of the City of New York and DoITT to dismiss is GRANTED as to plaintiff's claims under Title VII, the ADEA, and the ADA, but DENIED as to plaintiff's claims under section 1981, section 1983, NYSHRL, and NYCHRL. Local 1549's motion to dismiss is GRANTED as to all of plaintiff's claims.

Counsel for the City of New York and DoITT are directed to provide to plaintiff copies of all unreported cases cited herein.

SO ORDERED.

Dated: New York, New York
December 15, 2011

P. Kevin Castel
United States District Judge